IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| DRIVERDO, LLC, d/b/a DRAIVER<br><br>*Plaintiff*,<br><br>v.<br><br>SOCIAL AUTO TRANSPORT, INC., d/b/a HOPDRIVE<br><br>*Defendant*. | C.A. No. 3:23cv265<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, DriverDo, LLC, d/b/a Draiver ("Draiver"), files this Complaint against Defendant Social Auto Transport, Inc., d/b/a HopDrive ("HopDrive") for infringement of U.S. Patent Nos. 10,518,720 ("the '720 patent"), 10,787,133 ("the '133 patent"), 10,800,354 ("the '354 patent), 10,304,027 ("the '027 patent"), 11,100,451 ("the '451 patent"), and 11,562,316 ("the '316 patent) (collectively, the "Asserted Patents") and alleges as follows:

**THE PARTIES**

1. Plaintiff, DriverDo, LLC d/b/a Draiver is a Kansas limited liability company located at 7900 College Blvd. Ste 141, Overland Park, Kansas, 66210.

2. On information and belief, Defendant, Social Auto Transport, Inc., d/b/a HopDrive, is a Delaware corporation with its principal place of business at 1717 East Cary St., Richmond, Virginia, 23223.

1

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the Patent Act, 35 U.S.C. § 101, *et seq*.

4. This Court has personal jurisdiction over Defendant HopDrive because HopDrive is a corporation having its principal place of business in Virginia and because HopDrive has regularly and systematically transacted business in this judicial district, directly or through intermediaries, and/or committed acts of infringement in this judicial district. Defendant's Registered Agent in the Commonwealth of Virginia is Nicholas Mottas, and its registered office is 1717 E Cary St. Richmond, VA 23223 USA.

5. Venue is proper in this Court pursuant to 28 U.S.C. 1400(b) and Local Civ. R. 3(C).

**FACTUAL BACKGROUND**

A. **The Parties**

6. Draiver was founded in 2013 with the goal of revolutionizing vehicle inventory management through technological innovation and harnessing the gig economy. Draiver is a leader in developing innovative solutions for improving vehicle delivery and transport technologies, pioneering new methods to enhance customer and dealer experiences in the car-buying process.

7. The technology developed and patented by Draiver provides dealerships, vehicle service centers, fleet owners, rental agencies, OEMs and others with the ability to connect with top-rated drivers to move vehicles as affordably, quickly, and safely as possible. Draiver's platform and network provide consumers with a scalable solution, including fully vetted and insured drivers as well as driver monitoring. Draiver's novel methods and systems remove inefficiency and wasted time from the vehicle transport process through an AI-driven logistics

platform. Draiver's platform helps its customers save money by delivering vehicles faster and safer.

8. Draiver designed, developed, and implemented its innovative system to unparalleled commercial success. With over 167 metro areas covered, Draiver is the undisputed innovation and commercial leader in on-demand vehicle transport. Draiver is trusted by industry leaders, including Hertz, U-Haul, Volvo, Ford, Enterprise, and Mercedes-Benz of Downtown LA.

9. Throughout Draiver's life as a company, it has brought its innovations to market through partnerships, including partnerships with Uber, Reynolds, and DealerOn.

10. Critical to this case, one of Draiver's first partnerships started in early 2016 when Draiver worked with United Road Services to submit a bid to employ its innovative technology solutions for CarMax. The RFP, if awarded to Draiver and United Road Services, would have amounted to a long-term contract worth in excess of $20 million dollars.

11. As a result of the RFP process, Draiver began working with CarMax in a pilot program capacity. Beginning in approximately January of 2017, Draiver moved hundreds of CarMax cars using its revolutionary patent-pending vehicle transportation system. Draiver received move requests from Carmax, Draiver's contractors were responsible for going in and out of CarMax locations, and Draiver supplied bills of lading associated with the moves. Through the pilot program, CarMax and many of its employees experienced Draiver's technology first-hand.

12. On information and belief, two of CarMax's employees decided that they too would like to get into the on-demand vehicle transportation business. Months after Draiver piloted its technology with CarMax, these two CarMax Employees—Nick Mottas and Rob Newton— founded their own on-demand vehicle transportation business. They called their company "Social Auto Transport," though the company is now marketed as "HopDrive." When HopDrive was

founded in approximately July 2017, Draiver had been providing services to CarMax for over six months. On information and belief, Mr. Mottas and Mr. Newton were exposed to Draiver's technology while they worked at CarMax and while they were developing the business plans for HopDrive.

13. When HopDrive eventually began expanding into a few key markets, CarMax abruptly stopped using Draiver services. According to public information, CarMax then partnered with HopDrive. On information and belief, HopDrive used Draiver's patented technology, without authorization or license, which has directly resulted in lost business for Draiver.

14. On information and belief, HopDrive is attempting to capitalize on Draiver's commercial success by using Draiver's patented technology to develop a competing business model that provides short-distance vehicle transportation services. On information and belief, HopDrive has unfairly taken advantage of Draiver's expertise and patented technology to gain an undue advantage in the marketplace.

15. On information and belief, HopDrive's bad acts have also given it an unfair advantage in investment opportunities. For example, Acertus, Ready Logistics, and its parent company Cox Automotive were considering an investment in vehicle delivery start-ups and, in that process, reviewed Draiver's confidential business information. Ultimately, and on information and belief, Acertus and Cox Automotive invested in HopDrive. On information and belief, HopDrive's choice to copy Draiver's business model and unauthorized use of Draiver's patented technology have allowed it to gain advantages in the market it otherwise would not have been able to achieve.

16. As described further in the attached charts and below, HopDrive has directly infringed and continues to directly infringe Draiver's Asserted Patents by, among other things,

using, offering for sale, and/or selling a vehicle delivery system. HopDrive's infringing system is offered through: (1) HopDrive's website, for example, through the Move Planner interface in the Dealer Portal, and (2) HopDrive Apps including, for example, the Social Auto Transport app featuring the Driver Portal (collectively "the Accused Products"). For avoidance of doubt, the Accused Products include these, and any other websites and apps, past or present, that include the features discussed in this Complaint and that attached Exhibits.

17. HopDrive has never reached out to Draiver to license or purchase any of Draiver's Asserted Patents. Instead, on information and belief, HopDrive has copied Draiver's innovations to facilitate its business model and generate capital to fund its recent expansions.

    **B.**  **The Asserted Patents Provide Technological Solutions**

18. The technology covered by the Asserted Patents is critical to the vehicle delivery sector and is fundamental to HopDrive's ability to meet customer demand.

19. Draiver's Asserted Patents provide technological solutions to technological problems associated with vehicle transportation that revolutionized the vehicle delivery sector. These solutions are fundamental to Draiver's ability to serve its customers, and they have been misappropriated by HopDrive in violation of patent law.

20. Prior to Draiver's innovation, licensing and insurance was a constant frustration for vehicle transportation providers. Companies would need to make separate arrangements for each vehicle for a temporary or dealer license plate and any needed insurance. Further, many insurance policies used for short-term vehicle transportation needs would be piggie-backed on other policies, and the premium for such policies would be quite high. Draiver simplified this process through systems and methods that request licensing information automatically as part of generating the trip request, allow for by-the-trip insurance, and ensure that the vehicle is licensed during the trip, but that the licensing expires when the trip concludes. These technical innovations avoid the hassle of

coordinating licensing and insurance, reduce costs, and further ensure that documentation associated with the trip is easily accessed by the drivers of the vehicles.

21. Vehicle status reports were also a constant source of frustration prior to the patented inventions. There are many cases where vehicle condition must be confirmed and reconciled at the beginning and end of the trip. For example, when a car is at auction, the dents and scratches present at the auction house exit gate must be reconciled with the vehicle condition at the time of bid acceptance. Examples of information associated with a vehicle that typically need to be reconciled include fuel level, odometer, vehicle status and vehicle damage. In traditional systems, these reports were regularly lost, forgotten, mistakenly associated with the wrong vehicle or portion of a vehicle, or conveyed orally and misheard or misconstrued. The claimed systems and methods are designed such that accurate vehicle status reports are timely provided, photo proof is easy to associate with a vehicle, and those who need to access the report can do so easily and conveniently. For example, the system managing drivers will present vehicle status reports as well as real-time location updates for the vehicle. The vehicle status reports are received from the driver through a mobile device. The vehicle status report can contain photographs captured using the mobile device and odometer readings, as just a few examples.

22. In addition, prior methods and systems were focused on transporting a vehicle from point A to point B and were otherwise inflexible. For example, there are often tasks that must be completed in connection with a particular vehicle. While sometimes it may be appropriate or preferrable to deal with those tasks at the pick-up or drop-off location, other times that is not a feasible or preferred option. Draiver's system is designed with the flexibility to allow for intermediate task locations that the driver may stop at on the way to the vehicle's ultimate destination. Certain claims also describe a user interface including a map interface for specifying

particular locations (including pick-up locations, drop-off locations, and intermediate task locations) and components that make it easy for the user to specify the relevant locations for the trip in a novel way not contemplated by the prior art. For example, the described map interface makes it easier to choose intermediate locations that are convenient to one of the trip's endpoints or to the route the driver will take to complete the trip.

23. In traditional systems, tracking all of the vehicles being transported was difficult to impossible. Vehicle locations were often confirmed by phone and by lists of vehicles expected at particular locations. Draiver patented systems and methods that overcome this limitation of prior systems through a dynamic trip overview interface. This interface revolutionized the way that the vehicle owners are able to manage their fleet.

24. Finally, coordination of multiple drivers handling many vehicles potentially going to different final destinations, and potentially with additional tasks along the way presented challenges for traditional vehicle transportation systems. Draiver's Asserted Patents describe systems and methods allow the can determine the most efficient options. Considerations may include minimizing the number of required drivers, the total trip time, or the costs to pay the drivers.

25. For these reasons and many others, the existing processes for requestors and drivers working to transport vehicles was costly, inflexible, time-consuming, difficult to manage in real-time, and prone to mistakes and confusion. The technological solutions to these problems developed by Mr. Haque and Draiver solved these problems and provided satisfactory, cost-effective, efficient and user-friendly systems and methods that revolutionized the industry.

### C. In Patent Prosecution, All Claims Were Found Patent Eligible.

26. All of Draiver's Asserted Patents were issued following a patent eligibility evaluation by the United States Patent and Trademark Office. All of the claims of Draiver's Asserted Patents were found to be patent eligible.

*U.S. Patent Nos. 10,304,027, 11,100,451, and 11,562,316*

27. The '027, '451, and '316 patents are directed to patent-eligible subject matter. The '027 and '451 patents were initially rejected under 35 U.S.C. § 101. After a comprehensive evaluation, all § 101 rejections were withdrawn by the examiner. The '451 patent and '316 patents are continuations of the '027 patent.

28. During prosecution of the '451 patent, the examiner agreed that "the invention comprises more than can be carried out by a human using pen and paper or in the human mind" and contains "meaningful limitations" such as "the trip overview page's dynamic nature."

29. During prosecution of the '027 patent, the examiner stated that "the claims recite a practical application" rendering them patent-eligible under 35 U.S.C. § 101.

30. During prosecution of the '316 patent, the examiner considered § 101, but determined it was satisfied and raised no objection to the claims on that basis.

31. The claims of the '027, '451, and '316 patents provide particular, concrete methods for addressing technological problems in the field of transporting vehicles (or other goods) from one location to the next. For example, various claims of the '027, '451, and '316 patents describe particular user interfaces for specifying the details of a particular trip and providing a trip overview. The claimed user interfaces provides a concrete framework for the identification of locations and tasks for each vehicle assignment. Therefore, through the claimed interfaces, trips may be quickly and conveniently specified. Likewise, the dynamically updated trip overview page provides the

trip scheduler (for example, a dealer) with up-to date information on the location of their vehicles, which provided a substantial improvement over prior systems.

32. The user interfaces provide substantial additional functionality to the user. For example, certain claims recite a user interface including a map interface for specifying particular locations (including pick-up locations, drop-off locations, and intermediate task locations) and components that make it easy for the user to specify the relevant locations for the trip in a novel way not contemplated by the prior art. Therefore, the claimed interface provides inventive concepts, and the claims are directed to significantly more than any abstract idea. As one example, the claimed invention makes it easier to choose intermediate locations that are convenient to one of the trip's endpoints or to the route the driver will take to complete the trip. There was no disclosure of driving to particular intermediate locations to perform specific tasks in any prior art the examiner identified. Likewise, allowing the task locations to be selected from a map based on proximity to the pick-up location, the drop-off location, or the route between the pick-up and drop-off locations significantly improved user interface functionality. These features were likewise not routine and conventional, and not present in prior art systems.

33. There was nothing routine and conventional about the claimed user interfaces when Draiver's patents were filed. Likewise, there was nothing routine and conventional about setting tasks at intermediate locations in a vehicle transportation system.

34. The ordered combination of elements in the claims of the '027, '451, and '316 patents likewise provide inventive concepts that transform the claims into a practical, patent-eligible applications.

35. The claims, therefore, impose meaningful restrictions and provide practical applications that further confirm that the claims are directed to patent-eligible subject matter. For

at least these reasons, the claimed interface features are not routine or conventional, but rather uniquely solve problems relating to scheduling trips for transporting vehicles (or other goods) from one location to another.

*U.S. Patent Nos. 10,518,720, 10,787,133, and 10,800,354*

36. The '720, '133, and '354 patents are likewise directed to patent-eligible subject matter, as the USPTO correctly determined. The '133 and '354 patents are continuations of the '720 patent.

37. The inventions claimed in the '720, '133, and '354 patents generally relate to a driver allocation system and method. Specifically, the claimed inventions relate to managing drivers of vehicles that may be assigned to pickup and drop off vehicles at different locations.

38. As discussed above, one of the problems associated with vehicle transportation when the patents were filed related to how insurance was handled. Among other benefits, claims of the '720 and '133 patents allow for the purchase of by-the-trip insurance by requesting licensing information specific to the trip that allows for temporary licensure for the vehicle while being driven from a first location to a second location that expires after the trip. Claims of the '720 and '133 patents also include a trip-specific digital license plate that can display licensing information specific to the trip during the trip. Therefore, the claims of the '720 and '133 patents provide particular, concrete methods and systems for addressing technological problems associated with allocating drivers to procure targets such as automobiles. There was nothing routine and conventional about providing by-the-trip insurance nor the way in which the claims allow for licensing information specific to a trip to be requested and provided to a driver's smartphone.

39. Another problem associated with vehicle transportation when the patents were filed was the inability of users to request and drivers to accept the delivery of vehicles via at least one

intermediate location. This problem is also discussed in greater detail above. To the extent there was a routine and conventional way of transporting accomplishing tasks in connection with vehicle transportation, it was to perform the tasks at the vehicle pickup or dropoff location rather than an intermediate location. Draiver solved this problem and provided novel flexibility to select an assign one (or many) intermediate task locations for a target vehicle, as discussed in at least various claims of the '133 and '354 patent.

40. Yet another unsolved problem at the time of the '354 patent's filing related to the costly and inefficient process of reporting vehicle condition through vehicle status reports. As discussed above, prior systems and methods lacked organization, often missed key status facts about the vehicles, and required enormous expenditures of working hours to ensure accuracy. The '354 patent claims solved this problem by introducing a system and method of managing vehicle delivery that presents users with a status report, received on a mobile communications device, from the driver upon the driver receiving the vehicle for delivery. The system and method for reporting the vehicle status claimed by the '354 patent benefited users, who could now quickly spot vehicle issues, pinpoint vehicle damage, and address repairs on delivered vehicles faster than ever before.

41. The ordered combination of elements in the claims of the '720, '133, and '354 patents therefore provide inventive concepts that transform the claims into a practical, patent-eligible applications.

42. The claims, therefore, impose meaningful restrictions and provide practical applications that further confirm that the claims are directed to patent-eligible subject matter. For at least these reasons, the claimed interface features are not routine or conventional, but rather uniquely solve problems relating to vehicle transportation and driver allocation existing at the time the patents were filed.

### D. Patent Marking:

43. Draiver has complied with all relevant patent-marking requirements of 35 U.S.C. § 287(a). Draiver marks its products through virtual patent marking found at https://www.draiver.com/patents. Therefore, Draiver has provided constructive notice of the Asserted Patents.

### COUNT 1: INFRINGEMENT OF U.S. PATENT NO. 10,518,720

44. Draiver realleges and incorporates by reference the allegations set forth in the preceding paragraphs herein.

45. Draiver is the assignee and owner of all right, title, and interest in U.S. Patent No. 10,518,720 ("the '720 Patent"), titled "Digital Vehicle Tag and Method of Integration in Vehicle Allocation System."

46. The '720 Patent is valid, enforceable, and was duly issued on December 31, 2019, in full compliance with Title 35 of the United States Code. A true and correct copy of the '720 Patent is attached as Exhibit A to this Complaint.

47. Upon information and belief, Defendant has directly infringed at least claim 1 of the '720 Patent in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States the Accused Products. For example, Defendant has used each of the Accused Products in the United States, by offering for sale and actually selling the products to consumers and granting drivers access to and the use of its Accused Products, thereby directly infringing claim 1 of the '720 Patent. Attached as Exhibit A.1 is a claim chart detailing, in an exemplary manner, how the Accused Products infringe each element of exemplary claim 1.

48. By its actions, Defendant has injured Draiver and is liable to Draiver for infringement of the '720 Patent pursuant to 35 U.S.C. § 271. Draiver is entitled to compensation in an amount no less than a reasonable royalty and/or Draiver's lost profits resulting from HopDrive's infringement.

49. Upon information and belief, Defendant's infringement began at least as early as December 31, 2019, and has continued through the filing of this Complaint.

### COUNT 2: INFRINGEMENT OF U.S. PATENT NO. 10,787,133

50. Draiver realleges and incorporates by reference the allegations set forth in the preceding paragraphs herein.

51. Draiver is the owner of all right is the owner of all right, title, and interest in U.S. Patent No. 10,787,133 ("the '133 Patent"), titled "Digital Vehicle Tag and Method of Integration in Vehicle Allocation System."

52. The '133 Patent is valid, enforceable, and was duly issued on September 29, 2020, in full compliance with Title 35 of the United States Code. A true and correct copy of the '133 Patent is attached as Exhibit B to this Complaint.

53. Upon information and belief, Defendant has directly infringed at least claims 1, 4, 6-8, and 11-14 of the '133 Patent in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States the Accused Products. For example, Defendant has used each of the Accused Products in the United States, by offering for sale and actually selling the products to consumers and granting drivers access to and the use of its Accused Products, in the manner described above, thereby directly infringing claims 1, 4, 6-8, and 11-14 of the '133 Patent.

Attached as Exhibit B.1 is a claim chart detailing, in an exemplary manner, how the Accused Products infringe each element of exemplary claims 1, 4, 6-8, and 11-14.

54. Such Accused Products contain software components specially made for or adapted for use to infringe at least claims 1, 4, 6-8, and 11-14 of the '133 Patent and are not a staple article of commerce and are not suitable for substantial non-infringing use.

55. By their actions, Defendant has injured Draiver and is liable to Draiver for infringement of the '133 Patent pursuant to 35 U.S.C. § 271. Draiver is entitled to compensation in an amount no less than a reasonable royalty and/or Draiver's lost profits resulting from HopDrive's infringement.

56. Upon information and belief, Defendant's infringement began at least as early as September 29, 2020. As such, Defendant has and continues to infringe the '133 Patent.

### COUNT 3: INFRINGEMENT OF U.S. PATENT NO. 10,800,354

57. Draiver realleges and incorporates by reference the allegations set forth in the preceding paragraphs herein.

58. Draiver is the owner of all right is the owner of all right, title, and interest in U.S. Patent No. 10,800,354 ("the '354 Patent"), titled "Digital Vehicle Tag and Method of Integration in Vehicle Allocation System."

59. The '354 Patent is valid, enforceable, and was duly issued on October 13, 2020, in full compliance with Title 35 of the United States Code. A true and correct copy of the '354 Patent is attached as Exhibit C to this Complaint.

60. Upon information and belief, Defendant has directly infringed at least claims 1-3, 6-8, 10-15, and 18-19 of the '354 Patent in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or

importing into the United States the Accused Products. For example, Defendant has used each of the Accused Products in the United States, by offering for sale and actually selling the products to consumers and granting drivers access to and the use of its Accused Products, in the manner described above, thereby directly infringing claims 1-3, 6-8, 10-15, and 18-19 of the '354 Patent. Attached as Exhibit C.1 is a claim chart detailing, in an exemplary manner, how the Accused Products infringe each element of exemplary claims 1-3, 6-8, and 10-15, and 18-19.

61. Such Accused Products contain software components that are specially made for or adapted for use to infringe at least claims 1-3, 6-8, 10-15, and 18-19 of the '354 Patent and are not a staple article of commerce and are not suitable for substantial non-infringing use.

62. By their actions, Defendant has injured Draiver and is liable to Draiver for infringement of the '354 Patent pursuant to 35 U.S.C. § 271. Draiver is entitled to compensation in an amount no less than a reasonable royalty and/or Draiver's lost profits resulting from HopDrive's infringement.

63. Upon information and belief, Defendant's infringement began at least as early as October 13, 2020. As such, Defendant has and continues to infringe the '354 Patent.

**COUNT 4: INFRINGEMENT OF U.S. PATENT NO. 10,304,027**

64. Draiver realleges and incorporates by reference the allegations set forth in the preceding paragraphs herein.

65. Draiver is the owner of all right is the owner of all right, title, and interest in U.S. Patent No. 10,304,027 ("the '027 Patent"), titled "Trip Scheduling System."

66. The '027 Patent is valid, enforceable, and was duly issued on May 28, 2019, in full compliance with Title 35 of the United States Code. A true and correct copy of the '027 Patent is attached as Exhibit D to this Complaint.

67. Upon information and belief, Defendant has directly infringed at least claims 1-5, and 12-15 of the '027 Patent in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States the Accused Products. For example, Defendant has used each of the Accused Products in the United States, by offering for sale and actually selling the products to consumers and granting drivers access to and the use of its Accused Products, in the manner described above, thereby directly infringing claims 1-5 and 12-15 of the '027 Patent. Attached as Exhibit D.1 is a claim chart detailing, in an exemplary manner, how the Accused Products infringe each element of exemplary claims 1-5 and 12-15.

68. By their actions, Defendant has injured Draiver and is liable to Draiver for infringement of the '027 Patent pursuant to 35 U.S.C. § 271. Draiver is entitled to compensation in an amount no less than a reasonable royalty and/or Draiver's lost profits resulting from HopDrive's infringement.

69. Upon information and belief, Defendant's infringement began at least as early as May 28, 2019. As such, Defendant has and continues to infringe the '027 Patent.

### COUNT 5: INFRINGEMENT OF U.S. PATENT NO. 11,100,451

70. Draiver realleges and incorporates by reference the allegations set forth in the preceding paragraphs herein.

71. Draiver is the owner of all right is the owner of all right, title, and interest in U.S. Patent No. 11,100,451 ("the '451 Patent"), titled "Trip Scheduling System."

72. The '451 Patent is valid, enforceable, and was duly issued on August 24, 2021, in full compliance with Title 35 of the United States Code. A true and correct copy of the '451 Patent is attached as Exhibit E to this Complaint.

73. Upon information and belief, Defendant has directly infringed at least claim 1 of the '451 Patent in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States the Accused Products. For example, Defendant has used each of the Accused Products in the United States, by offering for sale and actually selling the products to consumers and granting drivers access to and the use of its Accused Products, in the manner described above, thereby directly infringing claim 1 of the '451 Patent. Attached as Exhibit E.1 is a claim chart detailing, in an exemplary manner, how the Accused Products infringe each element of exemplary claim 1.

74. Such Accused Products contain software components specially made for or adapted for use to infringe at least claim 1 of the '451 Patent and are not a staple article of commerce and are not suitable for substantial non-infringing use.

75. By their actions, Defendant has injured Draiver and is liable to Draiver for infringement of the '451 Patent pursuant to 35 U.S.C. § 271. Draiver is entitled to compensation in an amount no less than a reasonable royalty and/or Draiver's lost profits resulting from HopDrive's infringement.

76. Upon information and belief, Defendant's infringement began at least as early as August 24, 2021. As such, Defendant has and continues to infringe the '451 Patent.

**COUNT 6: INFRINGEMENT OF U.S. PATENT NO. 11,562,316**

77. Draiver realleges and incorporates by reference the allegations set forth in the preceding paragraphs herein.

78. Draiver is the owner of all right is the owner of all right, title, and interest in U.S. Patent No. 11,562,316 ("the '316 Patent"), titled "Trip Scheduling System."

79. The '316 Patent is valid, enforceable, and was duly issued on January 24, 2023, in full compliance with Title 35 of the United States Code. A true and correct copy of the '316 Patent is attached as Exhibit F to this Complaint.

80. Upon information and belief, Defendant has directly infringed at least claims 1, 7, and 8 of the '316 Patent in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States the Accused Products. For example, Defendant has used each of the Accused Products in the United States, by offering for sale and actually selling the products to consumers and granting drivers access to and the use of its Accused Products, in the manner described above, thereby directly infringing claims 1, 7, and 8 of the '316 Patent. Attached as Exhibit F.1 is a claim chart detailing, in an exemplary manner, how the Accused Products infringe each element of exemplary claims 1, 7, and 8.

81. Such Accused Products contain software components specially made for or adapted for use to infringe at least claims 1, 7, and 8 of the '316 Patent and are not a staple article of commerce and are not suitable for substantial non-infringing use.

82. By their actions, Defendant has injured Draiver and is liable to Draiver for infringement of the '316 Patent pursuant to 35 U.S.C. § 271. Draiver is entitled to compensation in an amount no less than a reasonable royalty and/or Draiver's lost profits resulting from HopDrive's infringement.

83. Upon information and belief, Defendant's infringement began at least as early as January 24, 2023. As such, Defendant has and continues to infringe the '316 Patent.

84. HopDrive's infringement has caused and continues to cause damage to Draiver. Draiver is entitled to recover damages sustained as a result of HopDrive's wrongful acts in an amount subject to proof at trial.

**PRAYER FOR RELIEF**

Wherefore, Draiver prays for judgment against Defendant as follows:

A. Finding that Defendant has infringed U.S. Patent Nos 10,518,720, 10,787,133, 10,800,354, 10,304,027, 11,100,451, and 11,562,316;

B. Awarding Draiver its damages resulting from Defendant's infringement in accordance with 35 U.S.C. § 284, including an assessment of prejudgment and post-judgment interest and costs, and, in any event, an amount no less than a reasonable royalty;

C. Awarding Draiver an ongoing royalty for Defendant's post-verdict infringement, payable on each product or service offered by Defendant that is found to infringe one or more of the Asserted Patents, and on all future products and services that are not colorably different from those found to infringe, or—in the alternative if Defendant refuses the ongoing royalty—permanently enjoining Defendants from further infringement pursuant to 35 U.S.C. § 283;

D. Providing an award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

E. Finding that this is an exceptional case and awarding to Draiver of its costs, expenses, and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

F. Providing such other relief, including other monetary and equitable relief, as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Draiver demands a jury trial on all issues so triable.

Date: April 20, 2023

Respectfully submitted,

*/s/ R. Braxton Hill, IV*
R. Braxton Hill, IV (VSB 41539)
MERRITTHILL, PLLC
919 E. Main St., Ste. 1000
Richmond, VA 23219
Telephone: (804) 916-1602
bhill@merrittfirm.com

Megan J. Redmond (*pro hac forthcoming*)
Carrie A. Bader (*pro hac forthcoming*)
Lydia Raw (*pro hac forthcoming*)
ERISE IP, P.A.
7015 College Blvd., Ste. 700
Overland Park, Kansas 66211
Telephone: (913) 777-5600
Facsimile: (913) 777-5601
megan.redmond@eriseip.com
carrie.bader@eriseip.com
lydia.raw@eriseip.com

*Counsel for Plaintiff DriverDo, LLC d/b/a Draiver*